IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PERVEZ RASHID

:

:

v.                                    :   Civil Action No. DKC 17-0726

:

WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY                     :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this employment case are the motion for partial summary judgment filed by Plaintiff Pervez Rashid ("Plaintiff") (ECF No. 13) and the cross-motion for summary judgment filed by Defendant Washington Metropolitan Area Transit Authority ("Defendant") (ECF No. 15). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion for summary judgment filed by Plaintiff will be denied, and the cross-motion for summary judgment filed by Defendant will be granted in part and denied in part.

**I.   Background**

**A.   Factual Background[1]**

Plaintiff is a Muslim of Pakistani descent. (ECF No. 4 ¶ 1). Defendant hired Plaintiff in September 2011 as a Manager,

---

[1] Unless otherwise noted, the facts outlined here are undisputed and construed in the light most favorable to the non-movant.

Inventory Planning for Bus Maintenance.  (ECF Nos. 14-5; 14-19).

Vyron Johnson initially supervised Plaintiff's work.

Plaintiff's initial performance review covered the time period

from September 19, 2011 until December 31, 2012.[2]  Mr. Johnson

evaluated Plaintiff's ability to meet a variety of "job

standards/performance goals" on a five level scale —

"Outstanding," "Exceeds Expectations," "Competent," "Needs

Improvement," and "Unacceptable."  Mr. Johnson rated Plaintiff

"competent" in four aspects of his job, "needs improvement" in

one, and "exceeds expectations" in one.  (ECF No. 14-7, at 3-4).

Of eight "Performance Factors," Mr. Johnson rated Plaintiff

"competent" in seven and "needs improvement" in one.  (*Id.* at 5-

6).  Mr. Johnson gave Plaintiff an overall score of "competent."

(*Id.* at 9).

It appears that the style of performance review changed in

2013.  At the beginning of 2013, Mr. Johnson identified six

objectives for Plaintiff to meet, and Mr. Johnson performed a

midyear review where he determined whether Plaintiff was on pace

to meet all six objectives.  (ECF No. 14-9, at 3-6).  In the

2013 year-end review, Mr. Johnson evaluated whether Plaintiff:

---

[2] Plaintiff has attached a document which he refers to as "Rashid's 2011 performance review" (ECF No. 14-7) and another which he refers to as "Rashid's 2012 performance review" (ECF No. 14-8).  These appear to be the same document and cover the same period of time.  As such, the two documents will be referred to as the initial performance review.

"met objective;" "did not meet objective;" or "exceeded objective." Mr. Johnson gave Plaintiff a "met objective" on each of the six objectives. (*Id.* at 8). Mr. Johnson also rated Plaintiff's behaviors in eight different areas from zero to two – two being the highest – and gave Plaintiff a "1" on each behavior for an overall score of "solid performer," the middle of three categories. (*Id.* at 11).

Mr. Johnson retired in June 2014, and Tara Wasiak replaced him. (ECF No. 4 ¶¶ 40-42). At some point in either 2013 or 2014, Defendant changed Plaintiff's job title and duties. Plaintiff alleges this occurred in 2014 under Ms. Wasiak's supervision and points to Mr. Johnson's affidavit for support. (*Id.* ¶ 49; 14-6). According to Defendant, Plaintiff's responsibilities had been divided by Mr. Johnson because Plaintiff had been unable to perform all the duties assigned. (ECF No. 14-19).

In 2014, Plaintiff was given seven objectives to meet.[3] Ms. Wasiak performed the year-end review. It initially showed that

---

[3] Plaintiff states, "[Ms.] Wasiak gave [Plaintiff] a 'needs improvement' evaluation in his 2014 midyear review . . . . [Defendant]'s Human Resources department intervened and forced [Ms.] Wasiak to change the performance rating to 'meets expectations' because [Ms.] Wasiak did not have adequate information[.]" (ECF No. 17, at 6). Although Plaintiff cites to the record, it is not clear the record supports the assertions. For example, Plaintiff cites Defendant's responses to Plaintiff's request for Admissions, but the only question about the 2014 review did not specify that it was for the mid-

3

Plaintiff met four objectives and did not meet three objectives. His overall objectives rating was "less than half of objectives met/exceeded," the lowest score. His overall performance based on the eight different behaviors was deemed "improvement required." (ECF No. 14-15, at 7-12). Because Defendant's human resources department did not believe Ms. Wasiak had supervised Plaintiff "long enough to justify the rating" (ECF No. 15, at 5; *see* ECF No. 17, at 6), the evaluation was revised to show that Plaintiff had met five objectives and did not meet two objectives. He received an overall objectives rating of "half or more of objectives met" and an overall performance rating of "solid performer." (ECF No. 14-16).

Defendant had to implement changes in 2015. Prior to 2015, Defendant did not have a mechanism in place to ensure quality control for material going into its buses, and the Federal Transit Administration ("FTA") standards mandated this mechanism. (ECF No. 14-17, at 3). Defendant wanted to install the quality control system in 2015. (ECF No. 15-15, at 6). This task gained added urgency after the FTA conducted an audit in March and April 2015 and published a report on June 17, 2015, stating that Defendant's "bus maintenance materials procurement

---

year review. (ECF No. 14-12, at 5). Similarly, the attached "2014 Mid-Year Performance Review" does not seem to show Plaintiff's rating or changes to the rating. (ECF No. 14-11).

process [was] not being executed in accordance with FTA standards[.]" (ECF No. 14-17, at 3).

This new program fell under Plaintiff's purview. Before the beginning of 2015, Ms. Wasiak provided Plaintiff with a series of objectives designed, at least in part, to measure the progress toward this new quality control system. As best can be gleaned from the record, to establish the program, Plaintiff had to create a system to manage data about the incoming products, hire new inspectors, provide them with necessary materials to perform inspections, determine a standard operating procedure for what to inspect and how to inspect it, and manage data relating to the quality of newly procured material in a way that helped the business run efficiently.[4] (ECF No. 14-18, at 3-8).

In his 2015 mid-year review, Plaintiff was warned that he was not on target to meet seven of nine objectives. (ECF No. 14-18, at 7). In his 2015 year-end review, Plaintiff was deemed not to have met eight out of the nine objectives. He received an overall performance rating of "improvement required." (ECF No. 14-18, at 10-18). Plaintiff challenged his performance review (ECF No. 14-25), but his challenge was denied (ECF No. 14-26).

---

[4] Neither Plaintiff nor Defendant provides lay definitions or outlines of these objectives.

Plaintiff wrote to Defendant's Director of the Office of Equal Employment Opportunity, James Wynne, on December 20, 2015. His email did not mention or identify any discrimination and simply stated that he "had open and outstanding grievances which need review and resolution." (ECF No. 14-21). Mr. Wynne wrote back explaining that the grievance was not within the scope of his office. (ECF No. 14-22).

On December 30, 2015, Plaintiff sent Ms. Wasiak a request for an alternative schedule to allow him to leave early on Friday. (ECF No. 14-12, at 4). In his response brief, Plaintiff explains that he made this request to attend Muslim Friday prayers. (ECF No. 17, at 5).

Following his 2015 evaluation, Plaintiff was not given a performance improvement plan ("PIP"). (ECF No. 15-15, at 10). Defendant terminated Plaintiff's employment on April 12, 2016. The parties dispute whether a PIP is a pre-termination requirement. (*Compare* ECF No. 17, at 10 *with* ECF No. 20, at 2).[5]

**B.   Procedural Background**

On April 18, 2016, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging age, religion, and national origin discrimination. (ECF No. 14-28).

---

[5] Defendant also points to a number of instances of specific misconduct. (ECF No. 15, at 5-6). Because Defendant's motion can be decided without reference to these events, they are not included.

The EEOC issued Plaintiff a right to sue letter on December 20, 2016. (ECF No. 14-30).

Plaintiff filed suit on March 16, 2017, and filed an amended complaint on April 6. Plaintiff asserts claims for discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, on the basis of national origin, race, and religion. Plaintiff also asserts a claim of retaliation for reporting discrimination. (ECF No. 4-1). Defendant answered and raised a number of affirmative defenses. (ECF No. 5).

On October 25, 2017, Plaintiff moved for partial summary judgment on Defendant's "third, fourth, and fifth affirmative defenses" which assert a failure to exhaust administrative remedies generally, a failure to exhaust administrative remedies as it related to the claims of racial discrimination and retaliation specifically, and that the suit is barred by the statute of limitations. (ECF No. 14, at 5). Defendant responded and filed a cross-motion for summary judgment arguing: Plaintiff failed to exhaust his administrative remedies for his claims of racial discrimination and retaliation; Plaintiff failed to establish his *prima facie* case because he was terminated for not meeting Defendant's legitimate expectations; and Plaintiff had failed to establish a religious accommodation

claim because Plaintiff did not notify Defendant about the need for a religious accommodation. (ECF No. 15).

## II. Standard of Review

A motion for summary judgment will be granted only if there exists no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). To prevail on a motion for summary judgment, the moving party generally bears the burden of showing that there is no genuine dispute as to any material fact. *Liberty Lobby*, 477 U.S. at 248-50. A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also EEOC v. Navy Fed. Credit Union,* 424 F.3d 397, 405 (4th Cir. 2005), but a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences."

*Shin v. Shalala,* 166 F.Supp.2d 373, 375 (D.Md. 2001) (citation omitted).

"When cross-motions for summary judgment are before a court, the court examines each motion separately, employing the familiar standard under Rule 56 of the Federal Rules of Civil Procedure." *Desmond v. PNGI Charles Town Gaming, LLC*, 630 F.3d 351, 354 (4th Cir. 2011). The court must deny both motions if it finds there is a genuine dispute of material fact, "[b]ut if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will render judgment." 10A Charles A. Wright et al., Federal Practice & Procedure § 2720 (3[d] ed. 1998).

## III. Reserved Affirmative Defenses

In its answer, Defendant stated, "[t]o the extent that discovery provides a basis, [Defendant] reserves the right to argue" that Plaintiff had failed to exhaust administrative remedies (Defendant's "Third Affirmative Defense") and that Plaintiff's suit was barred by the statute of limitation (Defendant's "Fourth Affirmative Defense"). (ECF No. 5, at 6). After the close of discovery and before receiving a motion from Defendant, Plaintiff purported to move for summary judgment on Defendant's "Third Affirmative Defense" and Defendant's "Fourth Affirmative Defense." (ECF Nos. 13, 14).

"The mere reservation of affirmative defenses is not an affirmative defense." *Kohler v. Staples the Office Superstore, LLC*, 291 F.R.D. 464, 473 (S.D.Cal. Feb. 12, 2013) (internal quotation marks omitted). Rather, the reservation of the right to assert an affirmative defense is a legal nullity. *Fed. Deposit Ins. Corp. v. Giannoulias*, No. 12-c-1665, 2014 WL 3376892, at *9 (N.D.Ill. July 10, 2014) ("The defendants' 'reservations of rights' are stricken as a legal nullity."); *Peters v. Credit Prot. Ass'n LP*, No. 2:13-CV-0767, 2015 WL 1022031, at *4 (S.D.Ohio Feb. 19, 2015) ("[R]eserving the right to an affirmative defense is a legal nullity."); *Wells v. Farmers All. Mut. Ins. Co.*, No. 2:07CV00036 ERW, 2009 WL 1259977, at *7 (E.D.Mo. May 4, 2009) (striking defendant's answer to the extent it reserved the right to assert an affirmative defense); *Messick v. Patrol Helicopters, Inc.*, No. 07-CV-039, 2007 WL 2484957, at *4 (D.Mont. Aug. 29, 2007) ("The Federal Rules of Civil Procedure do not provide a mechanism for a party to 'reserve the right' to assert a defense."). To assert an affirmative defense, a party must either do so in its initial answer or, if it finds information to support a defense during discovery, it must move to amend its initial answer to add an additional defense. Here, Defendant never asserted these defenses. Plaintiff is arguing over a legal non-occurrence, and, therefore, his motion for summary judgment will be denied.

Defendant's reservation to assert these defenses will be stricken. *See Messick*, 2007 WL 2484957, *4 ("Courts strike reserved affirmative defenses because they do not actually assert a defense.").

## IV. Failure to exhaust race and retaliation claims

Defendant's fifth affirmative defense states, "Plaintiff's claims, specifically claims made in Counts II (Race) and IV (Retaliation), should be dismissed." (ECF No. 5, at 6). Plaintiff moves for summary judgment arguing that he exhausted his administrative remedies before the EEOC for all his claims. (ECF No. 14, at 14). Defendant responds that Plaintiff failed to exhaust his administrative remedies because he failed specifically to allege either retaliation or racial discrimination in his EEOC Charge. (ECF No. 15, at 7).

Although courts have occasionally mislabeled the requirement that a Title VII complaint not exceed the scope of an EEOC charge as a procedural bar, the scope of the EEOC charge is a jurisdictional bar. *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 407 (4th Cir. 2013) ("[F]ederal courts lack subject matter jurisdiction over Title VII claims for which a plaintiff has failed to exhaust administrative remedies."); *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009) ("Importantly, a failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives

the federal courts of subject matter jurisdiction over the claim.").

An EEOC charge, however, "must be construed with utmost liberality since they are made by those unschooled in the technicalities of formal pleading." *Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll.*, 848 F.2d 457, 460 (4th Cir. 1988) (quoting *Kaplan v. Int'l Alliance of Theatrical & Stage Emps.*, 525 F.2d 1354, 1359 (9th Cir. 1975)). An EEOC charge exhausts not only those facts contained in the charge but also factual allegations that "a reasonable investigation of [the] administrative charge would have uncovered[.]" *Chacko v. Patuxent Inst.*, 429 F.3d 505, 512 (4th Cir. 2005). The United States Court of Appeals for the Fourth Circuit has found that a reasonable investigation would uncover additional facts, not identified in the original charge, related to the subject matter of the original charge. *See Chisholm v. U.S. Postal Serv.*, 665 F.2d 482, 491 (4th Cir. 1981) ("The allegation in the administrative complaint that USPS discriminated in promotions sufficed to put USPS on notice that the entire promotional system was being challenged, including aspects of the system such as discipline and testing which were not specifically enumerated in the complaint."). The Fourth Circuit, however, has found that a reasonable investigation would not uncover a different form of discrimination or types of discriminatory

conduct not identified in the initial charge. *See Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 133 (4th Cir. 2002) ("Administrative investigation of retaliation, and color and sex discrimination, however, could not reasonably be expected to occur in light of Bryant's sole charge of race discrimination").

## A. Failure to Exhaust Race Claim

The charge in this case did not provide notice of a racial discrimination claim. EEOC provided a form for Plaintiff to fill out with boxes corresponding to different types of discrimination. Plaintiff checked the boxes on the administrative charge for discrimination on account of religion national origin, and age but not race. His particulars included with the EEOC charge identified other employees as relevant comparisons and listed their ages and nationalities but not races. He also stated that he "was subject to unequal terms and conditions . . . based on [his] age (70) and national origin (Pakistan)" and then identified an incident related to his religion. (ECF No. 14-28).

Plaintiff argues that he did put Defendants on notice because his intake questionnaire mentioned race. (ECF No. 17, at 3). Plaintiff did not check the box for racial discrimination on the intake questionnaire either, and simply mentioned the races of coworkers in the intake questionnaire in the area where the form specifically asks for that information.

13

Because Plaintiff chose not to check the box for racial discrimination and did not give any facts related to race in the EEOC complaint, Plaintiff's charge did not exhaust claims related to racial discrimination. *See, e.g., Rader v. U.S.D. 259 Wichita Pub. Sch.*, 844 F.Supp.2d 1206, 1210-11 (D.Kan. 2011) (finding plaintiff failed to exhaust claims of national origin discrimination when plaintiff marked the box on the EEOC charge for racial discrimination but not the box for national origin discrimination and the statement in support of the charge did not identify national origin); *Ndonji v. InterPark Inc.*, 768 F.Supp.2d 263, 273 (D.D.C. 2011) (finding plaintiff failed to exhaust claims of racial discrimination when plaintiff marked the box for national origin and not racial discrimination and did not include any allegations related to race). The intake questionnaire is not the charge, and "[t]o treat Intake Questionnaires willy-nilly as charges would be to dispense with the requirement of notification of the prospective defendant, since that is a requirement only of the charge and not of the questionnaire." *Early v. Bankers Life & Cas. Co.*, 959 F.2d 75, 80 (7th Cir. 1992) (Posner, J.). Thus, Plaintiff cannot expand the scope of the charges to allegations only mentioned in the intake questionnaire. *See, e.g., Ahuja v. Detica Inc.*, 873 F.Supp.2d 221, 228 (D.D.C. 2012) ("[A] plaintiff cannot be allowed to transfer the allegations mentioned only in the

questionnaire to a timely charge itself.") (quotation marks and alterations omitted); *Middleton v. Motley Rice, LLC*, Civ. No. 2:08-3256-CWH, 2010 WL 3167360, at *6 (D.S.C. Aug. 9, 2010) ("Although it is true that the plaintiff circled 'race' and 'retaliation' on the questionnaire, this questionnaire cannot be used to amend the subsequently filed EEOC charge form.") (internal citation omitted), *aff'd*, 445 F.App'x 651 (4th Cir. 2011), *cert. denied*, 565 U.S. 1267 (2012).

Accordingly, Plaintiff failed to exhaust administrative remedies as to racial discrimination. Plaintiff's motion for summary judgment will be denied. Defendant's cross-motion will be granted, and Plaintiff's claims for racial discrimination will be dismissed.

### B. Failure to Exhaust Retaliation Claim

Plaintiff also did not check the box for retaliation in his EEOC Charge, and he never mentioned engaging in any protected activities. Rather, he asserted that he was discharged due to age and national origin. His complaint in this court asserts a different claim. The complaint states that Defendant had no "legitimate business reasons for the adverse action (discharge)" and that the stated reasons were "pretext for [Plaintiff's] protected activity in reporting adverse treatment to [Defendant's] EEO office." (ECF No. 4 ¶¶ 132, 133). The only asserted protected activity set forth in the complaint is

Plaintiff's submission on December 20, 2015, to WMATA's EEO Office. Obviously, no actions taken before that date can be retaliatory. The EEOC charge was not filed until April 18, 2016, after Plaintiff's discharge.

Plaintiff did check the box for retaliation and provided that he was subject to retaliation for "resisting unethical directives & filing grievance" (ECF No. 17, at 26) in the questionnaire. As previously explained, however, "[i]f a claim is initially mentioned in the charge questionnaire but is not included in the formal charge, then this claim is not exhausted." *Kellam v. Indep. Charter Sch.*, 735 F.Supp.2d 248, 253 (E.D.Pa. 2010).

Plaintiff's EEOC Charge gave no indication of retaliation, and the events mentioned in the charge — Defendant's failure to give an alternative work schedule, Defendant's refusal to transfer him, Defendant's decision not to hire him for a different position, and Defendant's providing him with an inadequate staff, no office, and an improper job description — do not relate to retaliation.

This case is not a case where the retaliation claim is related to the charges before the EEOC. The Fourth Circuit allows for a Plaintiff to bring a retaliation claim, even if not properly exhausted, "when the claimed retaliation is a continuation of the treatment alleged in the charge before the

court." *Jones*, 551 F.3d at 304. Not only is retaliation not related to or a continuation of any of the events alleged in the charge, Plaintiff excluded the possibility of retaliation by not checking the box after he was terminated and by alleging that the wrongful actions were a result of other unlawful animi.

Plaintiff's claim of retaliation will be dismissed. *See, e.g., Maes v. Leprino Foods Co.*, Civ. No. 15-0022-WJM-MEH, 2015 WL 4652779, *4 (D.Co. Aug. 6, 2015) (finding that because the charge did not at least describe retaliatory acts the charge did not exhaust claims related to retaliation); *Marcelus v. Corrs. Corp of Am./Corr. Treatment Facility*, 540 F.Supp.2d 231, 236 (D.D.C. 2006) (finding that when a plaintiff failed to check the box for retaliation or mention retaliatory events the plaintiff had not exhausted that claim). Plaintiff's motion for summary judgment will be denied. Defendant's cross-motion will be granted.

## V.   Religious Accommodation

Defendant argues that "Plaintiff's religious accommodation claim fails[.]"   (ECF No. 15, at 16).   Plaintiff does not provide any briefing on the issue, and the complaint does not appear to bring a standalone religious accommodation claim. Rather, the complaint seems to allege that the Defendant's failure to give Plaintiff time-off for religious observance was an example of the religiously-motivated discriminatory treatment

Plaintiff suffered. Accordingly, the motion for summary judgment as to the religious accommodation claim will be denied.[6]

## VI. Prima Facie Discrimination Claim

Defendant moves for summary judgment arguing that Plaintiff has failed to make out a *prima facie* case of any discrimination because "Plaintiff cannot show that he was performing his job satisfactor[il]y." (ECF No. 15, at 11-12). Plaintiff points to a variety of different sources to show that he was fulfilling Defendant's legitimate expectation prior to Ms. Wasiak becoming his supervisor. (ECF No. 17, at 14). Plaintiff seems to be suggesting that it was only Ms. Wasiak's "unrealistic expectations" he failed to meet. (*Id.* at 6).

The Title VII *prima facie* framework allows plaintiffs "who lack direct evidence a method for raising an inference of discrimination." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005). A plaintiff demonstrates a *prima facie* case of discrimination by showing: "(1) he is a member of a protected class; (2) he suffered adverse employment action; (3) he was performing his job duties at a level that met his

---

[6] If Plaintiff had wanted to bring a religious accommodation claim, then Defendant likely would be entitled to summary judgment because Plaintiff did not notify Defendant of the religious need for time-off on Friday. *See Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1019 (4th Cir. 1996) (finding plaintiff did not establish her *prima facie* case because she did not expressly notify her employer of her belief that conflicted with an employment requirement).

employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class." *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007). Courts consider an employer's legitimate expectations "to screen out those cases whose facts give rise to an inference of nondiscrimination, in other words, to eliminate the most common, nondiscriminatory reasons for the employer's conduct." *Warch v. Oh. Cas. Ins. Co.*, 435 F.3d 510, 514 (4th Cir. 2006). Where a plaintiff has failed to make out a *prima facie* case, the plaintiff is unable to create an inference of discrimination and the claim cannot proceed. *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996).

The Fourth Circuit recognized, moreover, the need to be flexible in analyzing these cases:

> Although on summary judgment an employer is free to assert that the job expectation prong has not been met, nothing prohibits the employee from countering this assertion with evidence that demonstrates (or at least creates a question of fact) that the proffered "expectation" is not, in fact, legitimate at all. Thus, where application of the qualification or expectation element of the *prima facie* case seems to preclude an otherwise meritorious claim, the plaintiff is free to demonstrate that the employer's qualifications or expectations are not, in fact, "legitimate."

*Warch*, 435 F.3d at 517.  In some cases, the requirement for making out a *prima facie* case overlaps with evidence that might also be relevant at the pretext phase.  Judge Hazel recently described how the two might work together:

> As the Court has previously noted, where an employer's stated reason for terminating a plaintiff was poor work performance, "the evidence with respect to these two issues overlaps, and the Court will accordingly consider them together." *Davis v. Nissan N. Am., Inc.*, No. GJH-14-3166, 2016 WL 4059346, at *7 (D.Md. July 27, 2016), *aff'd*, 693 F. App'x 182 (4th Cir. 2017) (*citing Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 515-16 (4th Cir. 2006)) (noting the flexibility of the *McDonnell Douglas* framework and finding "no impermeable barrier that prevents the employer's use of such evidence [of an employee's unsatisfactory work performance] at different stages of the *McDonnell Douglas* framework"); *Fortier v. Ameritech Mobile Commc'ns, Inc.*, 161 F.3d 1106, 1113 (7th Cir. 1998) (noting that there is "a great deal of overlap" with respect to the factual inquiry regarding whether an employee was fulfilling the legitimate performance expectations of the employer and whether the reasons given by the employer for the discharge are pretextual).  Thus, the Court first addresses whether the record indicates that Plaintiff's work performance was not meeting the expectation of [the employer]—to determine whether she has made a *prima facie* case and whether [the employer] can proffer a legitimate non-discriminatory reason for firing her — and then addresses whether Plaintiff can show that [the employer's] proffered reason for terminating her was pretextual.

*Miller v. Kramon & Graham PA*, GLH 15-1081, 2018 WL 722825, at *5 (D.Md Feb. 2, 2018).

Here, Plaintiff was given nine objectives but failed to meet eight of those objectives. For example, Plaintiff was supposed to equip all his inspectors with laptops by December 1, but he failed even to request laptops by December 1. Plaintiff missed the deadline for ordering inspection stamps and ultimately asked someone else to do it. Plaintiff's inability to meet these deadlines put Defendant "at risk of failing to deliver on a Corrective Action Plan mandated by the FTA. This failure could have [had] considerable consequences that could [have] include[d] delaying grant reimbursements and/or the loss of federal funding." (ECF No. 14-18, at 10). Plaintiff did not develop "material management reports" to be posted on a weekly or monthly basis with adequate metrics to measure progress. Instead, Plaintiff posted one form all year and that form was incorrect. (*Id.* at 11).

Plaintiff did not develop any standard operating procedures for the incoming parts inspection even though at the beginning of the year eight areas had been identified where a standard operating procedure was needed. In the end, Plaintiff missed the FTA's deadline to create the procedures, and Ms. Wasiak had to write them herself. (ECF No. 14-18, at 12). Twice, he

failed to follow-up on business processes, and Ms. Wasiak took over the projects.

Plaintiff did not create a mechanism "to archive the history of non-conforming material," did not effectively manage parts data, and did not train or define the roles of inspectors. Ms. Wasiak had to train the inspectors, and one of Plaintiff's coworkers had to manage parts data. (ECF No. 14-18, at 14). Plaintiff did not manage his employees' time, develop performance plans, or assess skill gaps and train. Plaintiff did "not create[] business plans for any area under [his] management." (*Id.* at 15).

Plaintiff raises a number of issues, but none of the issues raise a question of whether Plaintiff satisfied Defendant's legitimate expectations. Plaintiff states:

> All documentation prior to Wasiak becoming [Plaintiff's] manager establishes that he was performing adequately. [Plaintiff] got along well with his first supervisor at WMATA, Vyron Johnson . . . . Johnson never considered terminating [Plaintiff] for anything performance related. Moreover, [Plaintiff] establishes that he performed at or near WMATA's expectations before Wasiak began supervising [Plaintiff]. [Plaintiff's] former supervisor Johnson stated [Plaintiff] was knowledgeable and skillful in the position. Additionally, [Plaintiff's] . . . colleague, Timothy St. John, could not point to an instance where Rashid performed his duties at a less than acceptable level.

(ECF No. 17, at 14) (internal citations omitted).

Mr. Johnson's opinion of Plaintiff was that Plaintiff was mediocre. Plaintiff failed to meet Mr. Johnson's expectations as often as he exceeded Mr. Johnson's expectation. More importantly, "when a district court evaluates the question of whether an employee was meeting an employer's legitimate employment expectations, the issue is not the employee's past performance but whether the employee was performing well at the time of [his] termination." *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 329 (7th Cir. 2002) (internal quotation marks omitted). Mr. Johnson left in 2014 and, therefore, cannot speak to whether Plaintiff met Defendant's expectation at the time of Plaintiff's termination. Likewise, because the *prima facie* case examines the expectations of the employer, Mr. St. John's opinion about Plaintiff is "close to irrelevant." *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 281 (4th Cir. 2000) (internal quotation marks omitted). Mr. St. John also cannot and does not say Plaintiff met Defendant's expectations.

Plaintiff asserts that Ms. Wasiak "placed unrealistic expectations on the length of time required to hire and bring all three receiving inspectors onboard." (ECF No. 17, at 6). Even if true and assuming this made the hiring of inspectors an illegitimate objective, it would not explain why Plaintiff did not perform numerous other tasks. Plaintiff additionally alleges that Ms. Wasiak treated his American colleagues more

favorably. (*Id.* at 5-7). Plaintiff's colleagues are not proper comparisons because Plaintiff offers no evidence that they similarly failed to meet expectations. *See, e.g., Peele*, 288 F.3d at 330-32 (finding plaintiff failed to make a proper comparison because she had not identified a co-worker who was similarly situated as to performance); *Mackenzie v. City and Cty. of Denver*, 414 F.3d 1266, 1277 (10th Cir. 2005) (finding plaintiff failed to identify a comparison because her co-workers had committed similar acts of misconduct). Plaintiff further contends that he was not put on "a performance improvement plan despite [Defendant's] policy that all employees are to be placed on such a plan before being terminated" (ECF No. 17, at 16) and that Ms. Wasiak changed Plaintiff's job title and duties (*Id.* at 6). Even if true, these events would not help establish Plaintiff's *prima facie* case. Thus, Plaintiff's allegations do not give rise to an inference of discrimination.

In sum, through the performance review and objectives, Defendant clearly established its expectations and demonstrated Plaintiff failed to meet its expectations. Plaintiff offers no evidence that he met these objectives, or that they were illegitimate. Therefore, Defendant's motion for summary judgment will be granted.

**VII. Conclusion**

For the foregoing reasons, the motion for summary judgment filed by Plaintiff Pervez Rashid will be denied, and the motion for summary judgment filed by Defendant Washington Metropolitan Area Transit Authority will be granted in part and denied in part. A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
